UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALYSSA SMITH,

             Plaintiff,

    v.                                CIVIL NO. 2:23cv461

CHRISTINA MONTALVAN

             Defendant.

## MEMORANDUM ORDER

This matter comes before the court on four pending motions:

1. Defendant's Response, filed December 14, 2023, ECF No. 9 ("Response to the Complaint").

2. Plaintiff's Memorandum in Opposition to Defendant ECF 9 Filing, filed December 26, 2023, ECF No. 10 ("Memorandum in Opposition").

3. Plaintiff's Notice, filed January 12, 2024, ECF No. 11 ("Notice").

4. Defendant's Response, filed January 24, 2024, ECF No. 12 ("Response to Notice").

For the following reasons, the court finds that Defendant's Response to the Complaint, ECF No. 9, is untimely. The court construes the Response to the Complaint as a motion for leave to file an untimely response and finds that Defendant's late filing was due to excusable neglect. Additionally, Defendant has shown good cause to set aside the entry of default.

I.

On September 18, 2023, Plaintiff filed a Complaint against Defendant alleging violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, et seq. ("USERRA"), and the Virginia Wage Theft Act, Va. Code § 40.1-29.   ECF No. 1 at 1 (Complaint).   According to the Complaint, Plaintiff worked for Defendant as a live-in nanny from September 19, 2022, to January 27, 2023.   Id. at 2.   Plaintiff alleges that Defendant terminated her employment shortly after learning that Plaintiff intended to join the military.   Id. at 2-3.

Plaintiff executed service on Defendant on October 14, 2023. ECF No. 4.   A defendant typically has 21 days to respond to a complaint after service.   Fed. R. Civ. P. 12(a)(1)(A)(i).   Here, the 21st day fell on Saturday, November 4, 2023, so Defendant's response would have been due on Monday, November 6, 2023, giving her 23 days to respond.   See Fed. R. Civ. P. 6(a)(1)(C) (providing that, when the last day of the period falls on a Saturday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").   Defendant did not file a response within 23 days of service.

On November 14, 2023, the Clerk filed a Notice seeking a status report from Plaintiff's counsel.   ECF No. 5.   Counsel for Plaintiff filed a status report on November 21, 2023, informing the court that the parties were engaged in settlement negotiations,

2

but that Plaintiff would seek an entry of default, if the parties did not reach an agreement by the end of November 29, 2023. ECF No. 6. The status report also stated that Defendant intended to proceed with the action pro se, and that Plaintiff's counsel had provided her with the required Roseboro notice.[1]   Id. at 1; see Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Then, on December 13, 2023, having failed to reach a settlement agreement, Plaintiff filed a Request for Entry of Default, ECF No. 7, and the Clerk entered the default that day, ECF No. 8.

On December 14, 2023, Defendant filed a pro se Response to the Complaint. ECF No. 9. Defendant's Response to the Complaint included responses to Plaintiff's allegations and counterclaims against Plaintiff for, inter alia, unpaid rent, damage to her home, and costs for replacing locks.   Id. at 8. The Response to the Complaint did not seek leave of court to file an untimely response, but instead argued that Defendant should have been allowed 60 days to respond to the Complaint under Federal Rule of Civil Procedure

---

[1] No counsel has appeared in this case on behalf of Defendant. In the Response to the Complaint, Defendant states that she initially hired a lawyer to represent her in negotiating a settlement agreement, but she could not afford to continue retaining the lawyer once her initial retainer was exhausted. ECF No. 9 at 7. The Response to the Complaint does not provide any detail as to when Defendant was represented by an attorney, but the court accepts that Defendant has proceeded pro se in the settlement negotiations and this litigation until sometime between November 21, 2023, and November 29, 2023, the dates reflected in the status report. See ECF No. 6.

12(a)(3).   Id. at 1.   In support of this argument, Defendant represents that she is an active duty officer in the United States Coast Guard whose duties include frequent international travel. Id.   She is also the sole guardian of two of her children and has partial custody of a third child.   Id. at 4.   Defendant states that she requires a full-time, live-in nanny to complete her official duties and that she hired Plaintiff in direct support of those duties.   Id. at 1.   She thus argues that her Response to the Complaint was timely filed under the extended response timeline provided Rule 12(a)(3), because she is an officer of the United States sued in her individual capacity and the dispute arises "in connection with [her] duties performed on the United States' behalf."   Id.

Defendant's Response to the Complaint also provides another reason for her belated filing.   Defendant received service on October 14, 2023, shortly after returning from an official trip.[2]

---

[2] The Certificate of Service filed with the court states that Defendant received service on October 14, 2023.   ECF No. 4. Plaintiff correctly notes that Defendant's Response to the Complaint was filed 61 calendar days after October 14, 2023, and thus, would be out of time even under the extended response time in Rule 12(a)(3).   ECF No. 10 at 3.   However, Defendant's Response to the Complaint states that she received service on October 15, 2023, which would make her Response filed on the 60th day after service.   ECF No. 9 at 1.   Because the court finds that Defendant was not entitled to the extended response time in Rule 12(a)(3), see infra Section II, her Response to the Complaint was untimely regardless of whether it was filed 60 or 61 days after service. For the purpose of determining whether Defendant has shown "excusable neglect" in belatedly filing her response, see infra

ECF No. 9 at 1.  At that time, she had preexisting military orders to travel to Africa from October 27, 2023, to November 10, 2023. Id.  Defendant claims that she spent the period between the trips working to close out her first trip and preparing for her second trip.  Id. at 1-2.

Plaintiff filed a Memorandum in Opposition on December 26, 2023.  ECF No. 10.  Plaintiff's Memorandum in Opposition "assumes the Court will treat ECF No. 9 as a motion for leave to file an answer out of time," and argues against granting such a motion. Id. at 2.  According to Plaintiff, the court should not grant such a motion for leave because Defendant has not shown "excusable neglect" for filing a late response, as required by Federal Rule of Civil Procedure 6(b)(1)(B).  Id.  On January 12, 2024, Plaintiff filed a Notice asserting that Defendant's response "should be treated as a motion for leave to file an answer out of time" and requesting that the court decide the issue without oral argument. ECF No. 11.  On January 24, 2024, Defendant filed a pro se Response to Plaintiff's January 12 Notice, opposing Plaintiff's request to decide the issue of leave without oral argument.  ECF No. 12.

---

Section III, and good cause to set aside the entry of default, see infra Section IV, the court will assume she received service on the date listed on the Certificate of Service, October 14, 2023. ECF No. 4.  The effect of this one-day discrepancy on the court's analysis is miniscule, and the court's conclusions are the same whether Defendant received service on October 14 or October 15.

## II.

As an initial matter, Defendant's Response was untimely because she was not entitled to the extended response time in Rule 12(a)(3).  Rule 12(a)(3) provides,

> A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

Fed. R. Civ. P. 12(a)(3).  The 60-day response deadline is an extension of the 21-day response time under Rule 12(a)(1)(A)(i), typically allowed to defendants who do not waive service.  See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1346 (4th ed. 2024).  Here, the parties disagree on whether Defendant qualifies for an extended response time under Rule 12(a)(3), and the crux of this disagreement is whether Defendant's alleged termination of Plaintiff's employment was done "in connection with" her official duties.

The plain text of Rule 12(a)(3) does not provide guidance on the type of connection required between the challenged act and the defendant's official duties to trigger the extended response time, but an analysis of the corresponding Rule 4(i)(3) helps clarify Rule 12(a)(3)'s limits.  In situations where Rule 12(a)(3) applies, Rule 4(i)(3) requires the plaintiff to serve the complaint on both

the defendant and the United States. The purpose of requiring service on the United States in these situations is so the United States can determine whether it will represent the individual defendant. See Advisory Committee Notes to the 2000 Amendments to Rule 4(i)(2)(B)[3] ("Service on the United States will help to protect the interest of the individual defendant in securing representation by the United States, and will expedite the process of determining whether the United States will provide representation."). Accordingly, the purpose of the extended response time in Rule 12(a)(3) is to allow the United States sufficient time to make this decision. See Advisory Committee Notes to the 2000 Amendments to Rule 12(a)(3) ("Time is needed for the United States to determine whether to provide representation to the defendant officer or employee.").

Thus, the connection between the defendant's federal employment and the challenged act "must be determined as a practical matter, considering whether the individual defendant has reasonable grounds to look to the United States for assistance and whether the United States has reasonable grounds for demanding notice of the action." Advisory Committee Notes to the 2000

---

[3] The 2007 amendments to the Federal Rules of Civil Procedure restyled Rule 4 and moved the service requirement in Rule 4(i)(2)(B) to its current position in Rule 4(i)(3). See Advisory Committee Notes to the 2007 Amendments to Rule 4; Kurzberg v. Ashcroft, 619 F.3d 176, 184 n.7 (2d Cir. 2010) (noting this change).

Amendments to Rule 4(i)(2)(B). The "in connection with" language was chosen "as a functional phrase" to avoid confusion of traditional agency principles like "scope of employment." See id. However, the Rule still effectively requires the Defendant to have a reasonable belief that the act was done within her official capacity, because the United States would not otherwise provide legal assistance. See 28 U.S.C. 2679(d)(1) (requiring that the defendant "act[ed] within the scope of [her] office or employment at the time of the incident out of which the claim arose" to substitute the United States as a party defendant); 28 C.F.R. § 50.15(b)(1) (stating that the Department of Justice will not provide representation to a federal employee or officer if "[t]he conduct with regard to which the employee desires representation does not reasonably appear to have been performed within the scope of [her] employment with the federal government"). So, Rule 12(a)(3) can only provide an extended response time to a United States officer or employee sued in an individual capacity where the defendant has a reasonable ground to believe that she committed the challenged act or omission in her official capacity.

Here, the court finds that Defendant did not have reasonable belief that she committed the challenged act in her official capacity. Plaintiff was hired as a live-in nanny to care for Defendant's children in Defendant's private home. Even in the broadest understanding of Defendant's official duties, Defendant's

8

decision to enter into an employment agreement with Plaintiff and her alleged termination of the same, could not reasonably be considered official acts of a United States Coast Guard Officer. Therefore, Defendant did not have reasonable grounds to look to the United States for assistance in this matter.  The United States similarly had no reason to demand notice of this action because it faced no threat of vicarious liability, as there was no agency relationship between the United States and Defendant with regard to Plaintiff's employment.  See Padilla-Ruiz v. Commc'n Techs., Inc., 355 F. Supp. 3d 441, 450-51 (E.D. Va. 2019) (finding no vicarious liability under USERRA where employer did not have control over defendant employee's decision to fire the plaintiff).

In sum, Defendant does not have any reasonable ground to look to the United States for assistance in this case because there is no reasonable basis to think that the challenged act was done in her official capacity.  The United States has no reasonable ground to demand notice of the action because it would not provide representation to Defendant, as it faces no threat of vicarious liability.  Defendant's termination of Plaintiff's employment was therefore not encompassed by the "in connection with" language of Rule 12(a)(3), and she was not entitled to the 60-day extended response time in that Rule.  Defendant's Response to the Complaint was thus untimely because it was filed more than 23 days after she received service.

9

## III.

Having determined that Defendant was not entitled to an extended response time under Rule 12(a)(3), and the time for filing a responsive pleading has passed, Defendant must seek leave of court to file a response to the Complaint. Fed. R. Civ. P. 6(b)(1)(B). Plaintiff assumed that the court would construe Defendant's Response as a motion for leave and has argued against granting such a motion. ECF No. 10. Plaintiff has further requested that the court decide the issue of leave without oral argument. ECF No. 11. Because the court finds that Defendant's Response to the Complaint sufficiently addresses the issue of leave, the court will construe it as a motion for leave and determine this issue on the pleadings. See generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted) ("A document filed pro se is to be liberally construed.").

Under Rule 6(b)(1)(B), the court may only allow extensions of time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect" is an "elastic concept", that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392, 395 (1993). These circumstances include: (1) "the danger

of prejudice to the [non-movant]," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." See Thompson v. E.I. Dupont de Nemours & Co., 76 F.3d 530, 533 (4th Cir. 1996) (citing Pioneer, 507 U.S. at 395).[4] The most important of these factors is the reason for the delay. Id. at 534.

Plaintiff argues that Defendant has not shown "excusable neglect" for untimely filing her response. Plaintiff contends that permitting Defendant to file a late response would prejudice her because she "would have to incur substantial time and expense to litigate this case to conclusion." ECF No. 10 at 3. She also argues that the length of the delay, 38 days after the filing deadline, is "substantial." Id. Most of Plaintiff's argument against permitting leave to file a late response is directed at the reason for the delay. See id. at 4-6. Plaintiff contends that Defendant's "excuse" for late filing, her mistaken belief that she was entitled to extended response deadline under Rule

---

[4] Although Pioneer analyzed the "excusable neglect" standard under Bankruptcy Rule 9006(b)(1), and Thompson analyzed the "excusable neglect" standard under Federal Rule of Appellate Procedure 4(a)(5), the same analysis has been extended to the "excusable neglect" standard in Federal Rule of Civil Procedure 6(b). See Smith v. Look Cycle USA, 933 F. Supp. 2d 787, 790 (E.D. Va. 2013).

12(a)(3), is "meritless." _Id._ at 4.  Plaintiff further notes that Defendant did not seek assistance from the United States in this matter because, she claims, "the current lawsuit has _nothing_ to do with the performance of Defendant's duties on behalf of the United States." _Id._ at 5.

In considering all the relevant circumstances, the court disagrees.  The primary reason for Defendant's delay in filing her Response to the Complaint was her misinterpretation of Rule 12(a)(3).  Generally, a misinterpretation of the Federal Rules, standing alone, does not constitute excusable neglect.  _See_ Pioneer, 507 U.S. at 392 ("[I]gnorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."); _Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc._, 2012 WL 5473752, at *3 (E.D. Va. Nov. 9, 2012) (finding that misinterpretation of federal rule regarding judgment did not constitute excusable neglect).  Here, however, Defendant's mistake is understandable.  The "in connection with" language in Rule 12(a)(3) was chosen over more narrowly defined language to avoid confusion on the Rule's applicability, _see_ Advisory Committee Notes to the 2000 Amendments to Rule 4(i)(2)(B), but it also lends itself to overly broad interpretations of the Rule.  Although Defendant could not have a reasonable belief that her termination of Plaintiff's employment was done in her official capacity, her mistaken belief that the lawsuit was connected to her official

12

duties is a plausible misinterpretation of the rule.[5] See <u>Canfield</u> <u>v. Van Atta Buick/GMC Truck, Inc.</u>, 127 F.3d 248, 250 (2d Cir. 1997) ("[N]eglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations."); <u>Prizevoits v. Indiana Bell Tel. Co.</u>, 76 F.3d 132, 134 (7th Cir. 1996) ("The term 'excusable neglect' as used in [Federal Rule of Appellate Procedure] 4(a)(5) refers to the missing of a deadline as a result of such things as ... plausible misinterpretations of ambiguous rules.").

The court further finds that Defendant has acted in good faith.[6] <u>Pro se</u> parties are expected to be familiar with the Federal

---

[5] Plaintiff goes too far in asserting that "the current lawsuit has <u>nothing</u> to do with the performance of Defendant's duties on behalf of the United States." ECF No. 10 at 5. Defendant's official duties to the United States are the but-for cause of the employment relationship at the center of this dispute, so the dispute is, to some extent, connected to her official duties. That this connection is too attenuated to be covered under the scope of Rule 12(a)(3) does not mean that there is no connection at all. Further, Plaintiff's attempt to analogize this case to a case where the delay in filing was caused by "an attorney's misunderstanding of the plain language of a rule" is inapposite. See ECF No. 10 at 2 (quoting <u>Advanced Estimating Sys., Inc. v. Riney</u>, 130 F.3d 996, 998 (11th Cir. 1997)). Here, a <u>pro se</u> party simply misunderstood the scope of the rule, which is not evident from its plain language.

[6] The parties' "good-faith settlement discussions," ECF No. 6 at 1, in some part of which Defendant apparently proceeded <u>pro se</u>, <u>see supra</u> n.1, also appear to have at least partially contributed to the delay. The record indicates that the parties attempted to settle their dispute outside of this litigation until December 13, 2023, when Plaintiff filed the Request for Entry of Default. ECF No. 7. Once it became clear that the parties would not be able to reach a resolution, Defendant filed her Response to the Complaint the next day. ECF No. 9.

Rules of Civil Procedure,[7] and Defendant's decision to proceed <u>pro se</u>, standing alone, does not absolve her mistake.   <u>See McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").   However, this is not a case where Defendant knew she had a deadline and carelessly missed it.   Here, Defendant complied with the deadline to which Defendant mistakenly believed she was entitled.[8]   The court finds no reason to believe that Defendant's mistaken reading of Rule 12(a)(3), and the ensuing delay caused thereby, was made in bad faith.   This is the type of unusual case where the "elastic concept" of excusable neglect can cover a mistake in construing a rule.   <u>Pioneer</u>, 507 U.S. at 392.

Moreover, the time Defendant had to file a timely response was impacted by circumstances outside of her control.   She had just returned from an official trip on the day she was served, and she had preexisting military orders to travel to Africa two weeks later, so she was only in the country for 13 of the 23 days she had to file a response.   ECF No. 9 at 1-2.   Defendant's duty to comply with official military orders during a significant portion

---

[7] <u>See</u> <u>Pro Se Reference Handbook</u> (December 1, 2023), https://www.vaed.uscourts.gov/sites/vaed/files/EDVACOMPLETEforPr oSeHandbook_12-1-2023.pdf.

[8] Notwithstanding the factual dispute regarding the date of service.   <u>See</u> <u>supra</u> n.2.

of the period she had to file a response was clearly outside of her control.   While a busy professional life does not excuse neglect per se, in the context of the situation here, it supports the court's finding that the reason for Defendant's late response is excusable.[9]

The length of the delay and any prejudice to Plaintiff in filing the Response to the Complaint do not outweigh the interest in securing a just resolution in this action.   See Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed ... to secure the just, speedy, and inexpensive determination of every action and proceeding."). Here, the length of delay between the date Defendant should have filed her response and the date she filed the response is 38 days. This delay in filing is lengthier than typical cases where courts in the Eastern District of Virginia have found excusable neglect. See, e.g., Gilyard v. Northlake Foods, Inc., 367 F. Supp. 2d 1008, 1010 (E.D. Va. 2005) (filed next business day); Allison v. Soc. Sec. Admin., 2010 WL 1224874, at *1 n.3 (E.D. Va. Feb. 23, 2010),

---

[9] Defendant has shared with the court other life circumstances that have limited her ability to attend to this litigation, including her child's recent hospitalization and contemporaneous family court proceedings in Florida. See ECF No. 12 at 1-2. The court is mindful of Defendant's many personal and professional obligations.   However, while the court finds that Defendant's official military travel contributes to the excusability of her neglect here, competing obligations outside this litigation will not relieve Defendant of her responsibility to comply with deadlines in the future.

report and recommendation adopted, 2010 WL 1228047 (E.D. Va. Mar. 29, 2010) (accepting a pro se plaintiff's response filed four days after deadline). However, while very lengthy, this delay has little, if any, "impact on judicial proceedings." Thompson, 76 F.3rd at 532. This case is still in its infancy, and the delay in filing Defendant's Response to the Complaint will not affect the adjudication of this case moving forward.

Plaintiff has also failed to demonstrate any prejudice caused by the delay. Plaintiff contends that allowing Defendant to file a late response would be prejudicial because she is "entitled to a default judgment" and because filing the response would require her to incur additional time and expense to "litigate this case to conclusion." ECF No. 10 at 3. This argument is misguided. The danger of prejudice to Plaintiff is any prejudice that results from the 38-day delay, not from further litigating the case, and Plaintiff has not shown that this delay prejudiced her. See Stewart v. Va. Commonwealth Univ., 2011 WL 1827735, at *3 (E.D. Va. May 12, 2011) (finding that defendant did not demonstrate prejudice resulting from pro se plaintiff's failure to execute timely service). While the court's decision will now require her to litigate this case to its conclusion, she should have been prepared to undertake this effort when she filed the Complaint.

Considering the totality of the circumstances present here, the court finds that Defendant has shown "excusable neglect" for

her delay in filing the Response to the Complaint. This is an "extraordinary case[]," where allowing Defendant's misunderstanding to completely foreclose consideration of the substantive issues presented would result in injustice. Thompson, 76 F.3d at 534. Accordingly, the court **GRANTS** Plaintiff's motion for leave and **DIRECTS** the Clerk to file the Response to the Complaint. The parties will proceed with this litigation on the merits.

**IV.**

Since the court will treat Defendant's Response to the Complaint as filed, the court will set aside the entry of default against Defendant.[10] The court may set aside the entry of default against Defendant for "good cause." Fed. R. Civ. P. 55(c). "The Fourth Circuit has not specifically defined 'good cause,' but it has directed that district courts should consider (1) whether the moving party has a meritorious defense; (2) whether the moving party acts with reasonable promptness; (3) the defaulting party's culpability for the default; (4) the prejudice to the non-moving party; (5) whether there is a history of dilatory action; and (6) the availability and effectiveness of less drastic sanctions." Automobili Lamborghini S.p.A. v. Garcia, 467 F. Supp. 3d 385, 396

---

[10] District courts have the power to set aside an entry of default sua sponte. See Lindemann-Moses v. Jackmon, 644 F. Supp. 3d 163, 177 n.4 (M.D.N.C. 2022).

(E.D. Va. 2020) (citing <u>Payne ex rel. Estate of Calzada v. Brake</u>, 439 F.3d 198, 204-05 (4th Cir. 2006) and <u>Davis v. Williams</u>, 588 F.2d 69, 70 (4th Cir. 1978)). The criteria must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." <u>Lolatchy v. Arthur Murray, Inc.</u>, 816 F.2d 951, 954 (4th Cir. 1987) (citing <u>Tolson v. Hodge</u>, 411 F.2d 123, 130 (4th Cir. 1969)). The Fourth Circuit has "a strong preference" that cases be decided on the merits and defaults generally be avoided. <u>Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.</u>, 616 F.3d 413, 417 (4th Cir. 2010).

The court has already addressed three of the "good cause" factors in considering Defendant's "excusable neglect," and they only require brief review here. First, Defendant's 38-day delay was not reasonably prompt. Second, she is mostly culpable for the default based on her misunderstanding of Rule 12(a)(3), but the court also considers that she was out of the country for a significant portion of the response time for reasons outside her control. Third, the prejudice to Plaintiff in removing the default is minimal. Further, the court has no reason to believe that Plaintiff has a history of dilatory action, and the court does not find that a less drastic sanction is available. <u>See Vick v. Wong</u>, 263 F.R.D. 325, 331 (E.D. Va. 2009) (finding that alternative sanctions against a <u>pro se</u> party would not be appropriate or effective). Factors 4, 5, and 6 weigh in favor of setting aside

the default, while factors 2 and 3 weigh against setting aside the default.

Defendant's presentation of a meritorious defense decisively favors setting aside the default. "In order for a defense to be meritorious, the proffer of evidence must only be one 'which would permit a finding for the defaulting party or which would establish a valid counterclaim.'" Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 724 (E.D. Va. 2011) (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988)). "The burden for proffering a meritorious defense is not onerous, but the defenses must 'allege [ ] specific facts beyond simple denials or conclusionary statements.'" Id. (alteration in original) (quoting United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

Here, Defendant has alleged specific facts that call into question Plaintiff's USERRA and state law claims. Specifically, Defendant's Response to the Complaint alleges that Plaintiff was not fired, but instead voluntarily left her employment. ECF No. 9 at 2. This contradicts Plaintiff's version of events that Defendant fired her based on her application for military service, necessary to succeed on her USERRA claim. See Harwood v. Am. Airlines, Inc., 963 F.3d 408, 414-15 (4th Cir. 2020) (listing the elements of a USERRA claim, including that the employer took an adverse action based on the employee's application for military

service).   Similarly, Plaintiff's Virginia Wage Theft Act claim

requires her to show that withheld wages were actually due to her.

Va. Code § 40.1-29.   Defendant's Response to the Complaint claims

that Plaintiff was actually paid more than she was owed and

provides the specific sums paid to her.[11]  ECF No. 9 at 2-3.

The meritorious defenses presented in the Response to the

Complaint, considered with the other "good cause" factors, weighs

strongly in favor of setting aside the entry of default.   The

interests of justice are better served in this case by deciding

this case on the merits.  See Tolson, 411 F.2d at 130 ("Any doubts

about whether relief should be granted should be resolved in favor

of setting aside the default so that the case may be heard on the

merits.").   Accordingly, the court **SETS ASIDE** the entry of default

in this case for good cause shown.

### V. CONCLUSION

For the foregoing reasons, the court construes Defendant's

Response to the Complaint, ECF No. 9, as a motion for leave to

file an untimely response and **GRANTS** the motion.   The court further

**SETS ASIDE** the entry of default against Defendant for good cause

---

[11] The Response to the Complaint further states that the
employment contract between Plaintiff and Defendant was a verbal
agreement.   ECF No. 9 at 2-3.   While the terms of this agreement
are not clear from the pleadings, the Virginia statute of frauds
may even call into question the enforceability of a verbal
employment agreement.  See Va. Code § 11-2(8) (requiring a contract
or agreement be reduced to writing if it could not be performed
within a year).

shown.  The court will consider the Response to the Complaint as filed and this case will proceed on the merits.  The court **DIRECTS** Plaintiff to file a response to Defendant's counterclaims for damages, ECF No. 9 at 8, within twenty-one (21) days of the entry of this Memorandum Order.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for Plaintiff and to Defendant.

**IT IS SO ORDERED.**

/s/

Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

March 15, 2024